## LEE SPRAGUE & another *vs.* CITY OF WORCESTER.

In an action of tort against a city for obstructing a stream by the erection of a bridge, to the injury of a mill, evidence that one of the then owners of the mill, at the hearing before the committee of the city council, objected to the construction of the bridge, as likely to obstruct the water, is inadmissible for the plaintiff; although the defendants have been allowed to show, upon cross-examination of the other owner, that he was one of that committee, and approved of the bridge.

An action of tort will not lie against a city for obstructing a stream to the injury of a mill, by the erection of a bridge, if the bridge is suitably constructed so as to let the water pass off with reasonable freedom, at all times, except in case of extraordinary freshets not occurring annually.

ACTION OF TORT for the obstruction of the water in Blackstone River, and setting it back upon the plaintiffs' mill, by the erection of a new bridge, in repairing the highway from Millbury to Worcester.

At the trial in the court of common pleas in Worcester, before *Briggs,* J., Josiah G. Perry, who, jointly with his brother Dexter, was owner of the mill when the new bridge was built, was examined as a witness by the plaintiffs. Upon his cross-examination, the defendants were allowed, against the plaintiffs' objection, to prove that he was one of a committee appointed by the city council to contract for the construction of the new bridge; and to ask him whether he did not sign the contract, whether he did not petition for the bridge, and whether he did not express a preference for a bridge of two rather than of three arches.

The plaintiffs then offered to prove by Dexter Perry that he objected, to the committee, that he did not think there would be

room enough for the water to pass under the bridge proposed by them, and that he did this more than once. To this evidence the defendants objected; but the court admitted it.

The defendants requested the court to instruct the jury, " that if the bridge erected by the defendants was a reasonable and proper structure, and reasonable care was taken in its construction, and nothing was done negligently, wantonly or carelessly to cause damage to the plaintiffs, and damage was not caused except in extraordinary freshets for unimportant periods of time, the plaintiffs were not entitled to recover."

The presiding judge declined to give this instruction ; and instructed the jury, " that if they believed that the width of the space for the passage of the water under the new bridge was materially diminished from what it was under the old bridge ; and if they were satisfied, from the evidence before them, that the bridge could have been so constructed that the width of the space for the passage of the water would not have been so diminished, and that the effect of the construction of the new bridge has been, that when there has been a great flow of water, caused by rain, or the breaking up of winter, to obstruct the free and accustomed flow of the water and the passage of ice, and to set the water back upon the plaintiffs' mill, and thereby for a time to prevent the use of said mills by the plaintiffs, or to occasion other damage as set forth in their declaration, the plaintiffs would be entitled to recover."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions, which were argued at Worcester at October term 1858.

*C. Devens, Jr. & G. F. Hoar,* for the defendants, upon the instructions requested and given, cited *Mellen* v. *Western Railroad,* 4 Gray, 301 ; *Rowe* v. *Granite Bridge,* 21 Pick. 348 ; *Dodge* v. *County Commissioners,* 3 Met. 383 ; *China* v. *Southwick,* 3 Fairf. 238 ; Angell on Watercourses, § 347.

*P. C. Bacon & P. E. Aldrich,* for the plaintiffs, cited *Perry* v. *Worcester,* 6 Gray, 544 ; *Drake* v. *Curtis,* 1 Cush. 395.

SHAW, C. J. This is an action of tort, in the nature of a common law action on the case, for damages to the plaintiffs'

real estate by the city of Worcester, by erecting a bridge on a public highway over a watercourse, in such manner as to obstruct the flow of water, occasionally set it back on the plaintiffs' mill, and thereby cause damage.

The principles on which such an action can alone be maintained were fully stated in the case of *Perry* v. *Worcester*, 6 Gray, 544. We suppose, from the names, that the bridge and mill mentioned in that case are the same with those in the present. The rule stated in that case, we think, is well established by authorities. In providing thus for a public easement, it is the right of the public, by their duly constituted agents — in such a case as this, by the city — to erect the bridge, whether it take a man's land, or do other damage to his property or not, under the right of eminent domain. By any such taking, or other damage done to private property, the city and its agents are not wrongdoers, and no action, as for a wrong done, will lie against the corporation or its officers; the party damnified must seek his compensation, and is entitled to a complete indemnity, in the manner provided by the Constitution and laws. This extends to all damage; not only to that arising from the taking, but to all other damage incident to or consequent upon the erection and making of such highway or bridge.

This presupposes that the public work will be so constructed as to cause no unnecessary damage; if, therefore, for want of reasonable care and skill in the construction of such work, unnecessary damage is caused, it is not warranted by the right of eminent domain, and therefore the corporation or its agents are responsible for it. Such damage, however, must be real, substantial and appreciable, and not merely theoretical or slight, or such as may be caused by an unusual or extraordinary swell of the waters.

In coming to the exceptions, the court are of opinion that the testimony of Dexter Perry, an owner of the mill at the time of the erection of the bridge, was not competent. It was but the expression of an opinion to the committee for building the bridge, of whom his brother and co-proprietor was one. It was but the opinion of one person, before the bridge was built

without a suggestion that he had any knowledge, or any skill or experience. It was not warranted by the fact that his co-proprietor had been asked certain questions on cross-examination.

But the material ground upon which the court are of opinion that the verdict cannot be supported is, that the directions of the judge were defective, and not adapted with sufficient precision to the case.

The defendants requested the court to instruct the jury, that " if the bridge was a reasonable and proper structure, and reasonable care was taken in its construction, and nothing was done negligently, wantonly or carelessly to cause damage to the plaintiffs, and damage was not caused except in extraordinary freshets for unimportant periods of time, the plaintiffs were not entitled to recover."

By " a reasonable and proper structure " we understand a bridge of suitable width of water way, and otherwise so arranged as to carry off the water with reasonable freedom, as well when broken ice was passing off with it, as at other times, and also when the stream was swelled with its ordinary annual increase at the breaking up of winter; and by the exception of " extraordinary freshets for unimportant periods of time " we consider was meant freshets not ordinarily occurring annually, but which come occasionally. If such was the intention of the prayer of the plaintiffs for instruction, and it was so explained and understood, we think the instruction ought to have been given. Bridges are not required to be so built as to secure all private proprietors of mills or lands from all possible damage from extraordinary causes; but to be so reasonably constructed as to secure private proprietors from damage from the ordinary action of the elements, including in such ordinary action water in its high and low annual stages, open or frozen, or carrying off floating ice.

The court declined to give this instruction; but did instruct the jury, that if they believed that the width of the space for the passage of water under the new bridge was materially diminished from what it was under the old bridge, and if satis-

ficd, from the evidence, that the bridge could have been so constructed that this width would not have been diminished, and that the effect had been, that when there has been a great flow of water caused by rain, or the breaking up of winter, to obstruct the free and accustomed flow of the water and the passage of the ice, and set the water back upon the plaintiffs' mills, and thereby for a time to prevent the use of said mills, or to occasion other damage, as set forth, the plaintiffs would be entitled to recover.

This instruction, taken in connection with the refusal to give the instruction substantially as prayed for, was defective and erroneous. The test prescribed was erroneous — the width of water way under the old bridge. That was of wood, supported on piles, and may have been three or four times as broad as necessary. Whereas all the defendants were bound to do was to build a bridge with a water way reasonably sufficient to carry off the water, in its ordinary and usual condition, at all seasons of the year.

Again; " if the bridge could have been so constructed that this width would not have been diminished." This instruction was given without any qualification in regard to expense. No doubt a lofty bridge might have been erected at great expense, without touching the water ; but if such a structure would subject the corporation to an unreasonable expense, it could not be required.

So if, by means of the bridge, the water was set back " for a time," so as to prevent the use of the mills, or occasion other damage. The jury would be bound, under this instruction, to find for the plaintiffs, if the water was set back by an unusual and extraordinary flood, and for any time, however short.

For the reasons already given, we are of opinion that these instructions were defective and incorrect, founded upon a mistaken view of the duties of towns and cities in the construction of highways and bridges, such as would impose an unreasonable burden upon them, and not necessary to the reasonable security of private rights.          *Exceptions sustained.*